IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EVAN SLEIGHT and ROBYNLEE SLEIGHT,<br><br>    Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY, ROCKAWAY CAR CENTER , INC., and TIM LAMONT WHITESIDES,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PLAINTIFFS' MOTION TO REMAND<br><br><br><br><br>Case No. 1:11-CV-172 TS |

This matter is before the Court on Plaintiffs' Motion for Remand.[1]

I.  BACKGROUND

This case arises out of an automobile accident in which Plaintiff Evan Sleight was involved.  On March 29, 2010, Mr. Sleight was driving his Ford Explorer south on Interstate 15 in Box Elder County, Utah when the tread separated on the left rear tire of the Explorer, causing

---

[1]Docket No. 7.

him to lose control of the vehicle.  The Explorer left the highway and rolled over repeatedly.  As a result of the accident, Mr. Sleight is now a quadriplegic.

Mr. Sleight bought the vehicle from Defendant Tim Whitesides.  Plaintiffs allege that Whitesides was working as an agent for Rockaway Car Center, a New York corporation that sells motor vehicles.  Whitesides denies this allegation, asserting that he bought the vehicle from Rockaway as an unaffiliated consumer for his personal use and only sold the vehicle due to financial hardship.

Plaintiffs have alleged strict liability and negligence claims against Whitesides.

## II.  PROCEDURAL HISTORY

The suit was originally filed in state court in New York.  Defendants then removed to the Eastern District of New York.  Plaintiffs filed a motion to remand, arguing that diversity was not complete because Defendant Rockaway's principal place of business is in New York.  Defendants responded that Rockaway was fraudulently joined and therefore did not defeat diversity.  The parties also disagreed on whether New York or Utah law applied.

Plaintiffs contended that New York law applied, and the parties did not dispute that Plaintiffs would have a claim against Rockaway under New York law.  Defendants, contending that Utah law applied, argued that Rockaway was a "passive seller" and thus could not be strictly liable under Utah Code Ann. §78B-6-703.  That section limits liability for product defect claims to manufacturers and "initial sellers."  "Passive sellers"—those who do not "participate in the design, manufacture, engineering, testing, or assembly of a product"—are therefore not subject to

suit for products liability.[2] Defendants argued that Rockaway did not "participate in the design, manufacture, engineering, testing, or assembly" of the Explorer and therefore was a passive seller that could not be subject to a strict liability claim. The district court disagreed, noting that Plaintiffs were alleging that Rockaway was more than a passive seller because it modified the vehicle by placing tires on it. Stating that it was obliged to accept as true Plaintiffs' allegation that Rockaway had replaced the tires on the vehicle, the court concluded that under New York or Utah law Plaintiffs had alleged a colorable claim against Rockaway and remanded the case to state court.

After the case was remanded, Defendants filed a motion to dismiss for forum non conveniens, arguing that the case should be brought in Utah. The state court granted the motion, and Plaintiffs subsequently refiled in Utah. Defendants then removed to this Court. Defendant Whitesides is a citizen of Utah, and therefore defeats diversity jurisdiction if properly joined. However, Defendants have now alleged fraudulent joinder of Whitesides. Defendants argue that Whitesides is a passive seller, and thus cannot be strictly liable for a defect in the Explorer or the tire. Plaintiffs have conceded that Whitesides cannot be strictly liable,[3] but assert that their negligence claim against Whitesides remains viable. In addition to allegations that Whitesides

---

[2] *Yirak v. Dan's Super Markets, Inc.*, 188 P.3d 487, 489 (Utah Ct. App. 2008).

[3] Docket No. 13, at 4 ("Plaintiffs do not dispute Ford's contention that defendant Whitesides cannot be held strictly liable for the sale of the Explorer."). Strangely, Plaintiffs seem to argue that Whitesides is more than a passive seller for purposes of the strict liability statute because he selected and installed the new tires on the Explorer, but then go on to concede that Whitesides cannot be strictly liable. The Court will therefore not consider whether Whitesides is a passive seller for purposes of strict liability.

knew or should have known about the allegedly defective manufacturing condition in the vehicle, Plaintiffs now also allege that Whitesides, not Rockaway, installed the defective tire on the Explorer and that he knew or should have known about the defect.

The question before this Court is therefore whether Whitesides is properly joined in this case with respect to the negligence claim.

## II.  STANDARD OF REVIEW

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."[4] The doctrine of fraudulent joinder provides that "joinder of a resident defendant . . . against whom there is in fact no cause of action, will not defeat removal."[5] Considering a fraudulent joinder claim in *Montano v. Allstate Indemnity*,[6] the Tenth Circuit stated:

> The case law places a heavy burden on the party asserting fraudulent joinder.  A representative example states: To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against the joined party in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.[7]

---

[4] *Purdy v. Starko, Inc.*, 2010 WL 3069850, at *2 (D. Utah Aug. 4, 2010) (quoting *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1297, 1294 (D. Kan. 2009)).

[5] *Roe v. Gen. Life Ins. Co. & Phillips Petroleum Co.*, 712 F.2d 450, 452 (10th Cir. 1983) (citing *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

[6] 211 F.3d 1278 (10th Cir. 2000) (unpublished).

[7] *Id*. at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)).

This Court has further stated that

> [m]any courts have placed substantial emphasis on the notion that "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants" then the matter must be remanded. However, this "benefit of the doubt" standard must be tempered by reason. Upon piercing the pleadings and considering the entire record, courts must make a determination as to whether there is any "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." [8]

Accordingly, to decide whether Whitesides was fraudulently joined, the Court must determine whether, based on the entire record, there is a reasonable basis for Plaintiffs' negligence claim against Whitesides.

### III.  DISCUSSION

Plaintiffs have alleged that Whitesides was "negligent in inspecting, promoting and selling the subject vehicle."[9] Based on Plaintiffs' factual allegations, the Court understands their claims to be that Whitesides negligently failed to warn Plaintiffs of the dangerous condition of (1) the vehicle itself and (2) the tire. Defendants argue that Plaintiffs' position is foreclosed by *Sanns v. Butterfield*,[10] a Utah Court of Appeals case.

In *Sanns*, a plaintiff alleged negligence and strict liability against a Ford dealer. Defendants moved for summary judgment on both claims. The Court rejected the strict liability claim because the dealer was a passive seller. Considering the negligence claim, the Court stated that "a duty to warn a consumer of a defective product lies with a seller or manufacturer of a

---

[8] *Jackson v. Philip Morris Inc.*, 46 F. Supp. 2d 1217, 1221-22 (D. Utah 1998).

[9] Docket No. 2 Ex. A, at 7.

[10] 94 P.3d 301 (Utah Ct. App. 2004).

product who 'knows or should know of a risk associated with its product.'"[11] The Court then rejected the negligence claim because plaintiffs had offered no evidence that the dealer knew or should have known about an alleged defect in the van it was selling.[12]

Plaintiffs contend that the instant case is distinguishable because Plaintiffs have presented evidence that Whitesides knew or should have known about the alleged defects. The affidavits of both Plaintiffs assert that (1) Mr. Whitesides appeared to be selling many cars at the time the Explorer was purchased and that he represented that he sells cars "on the side"; (2) that he persuaded them to buy the Explorer instead of the car they were initially interested in; (3) that he told them that the Explorer was "in really good condition" and that he had "fixed it up with an A/C, fan belt, new tires and windshield wipers"; (4) that Mr. Sleight purchased the vehicle for $3,500 and then took it to a mechanic Tony Morgan for inspection, who told Mr. Sleight after an examination that the car was "not in good condition" and that he should return it to the seller; (5) that Whitesides refused to take the vehicle back; and (6) that Whitesides eventually agreed to refund $800 of the Sleights' payment to assist with repair of the vehicle.

Based on these alleged facts, Plaintiffs argue that Whitesides must have known about the alleged defects in the vehicle, because he

> held himself out as a car dealer and encouraged them to buy the Explorer, despite the fact that they went to him to purchase a different vehicle. Second, after

---

[11]*Id.* at 304 (quoting *House v. Armour of Am., Inc.*, 886 P.2d 542, 547 (Utah Ct. App. 1994)).

[12]The Court does not take *Sanns* to say that a passive seller can never negligently fail to warn. Rather, a passive seller only has a duty to warn if it knows or should have known of a defect.

> purchasing the vehicle, Plaintiffs had it inspected and discovered that there were numerous mechanical problems, including problems with the suspension. Defendant Whitesides would have certainly known at this time that the vehicle had mechanical problems, yet he refused to allow Plaintiffs to return the vehicle.[13]

This unfocused proffer, at best, creates a tenuous inference that Whitesides would have known, if he had the requisite competence to perform an inspection and did so, that the car had "mechanical problems including problems with the suspension." But Plaintiffs have alleged nothing that would support the notion that Whitesides has the competence to diagnose mechanical problems in automobiles, nor that he inspected the vehicle. Furthermore, Plaintiffs have not even taken the trouble to state that Whitesides must have known about the specific unreasonably dangerous conditions alleged here. Whitesides, on the other hand, has submitted a sworn affidavit stating that he did not know about the alleged problems, that he has no training in diagnosing such issues, and that the only inspection he ever ordered on the vehicle by a professional focused on the "compressed natural gas system."[14]

The parties' affidavits conflict on whether Whitesides replaced the tires, but the Court is required to resolve this factual dispute in favor of Plaintiffs for purposes of this Motion. However, this does not amount to evidence that Whitesides must or should have known that one of the tires had a defect. Whitesides's affidavit states that he was "unaware that the risk of a tire suffering tread separation increases with the age of a tire, even if the tire does not exhibit unusual wear or damage, and [that he] was unaware of any dangers associated with the Explorer's tires

---

[13]Docket No. 13, at 5.

[14]*Id.* Ex. D, at 3.

when [he] sold the Explorer to Evan Sleight."[15]  Plaintiffs are not explicit on this point, but the Court assumes that Plaintiffs' response is that, because of his status as an alleged dealer, Whitesides could not help but know that the tire was defective when he installed it.

The Court recognizes that there is a legitimate dispute of fact as to whether Whitesides was operating as a used car dealer or merely as private seller when he sold the Explorer to Sleight and that the Court must accept Plaintiffs' allegations as true.  However, even if Whitesides was a dealer, that hardly amounts to evidence that he knew or should have known of any alleged defects.  Though it may be the case that a car dealer is more likely to know of the existence of a manufacturing defect in a vehicle than a private individual, Plaintiffs must do more than ask the Court to infer that Whitesides must have known based on his alleged dealer status.  Resolving all factual disputes in favor of Plaintiffs, the Court can find no evidence supporting even an inference that Whitesides actually knew or should have known about the alleged defects.

In short, all Plaintiffs have offered to this Court is a bare allegation that Whitesides must have known something was defective, coupled with alleged facts that fall far short of justifying an inference, let alone a conclusion, that Whitesides had such knowledge.  When considering fraudulent joinder, disputes of fact are resolved in favor of the non-movant.  However, as noted above, this calculation must be "tempered by reason."  Where a court has pierced the pleadings and found only evidence that contradicts the non-movant's position, the court is not required to nevertheless accept Plaintiffs' allegations.

---

[15]*Id.* Ex. B, at 3.

Based on the dearth of evidence in the record supporting Plaintiffs' position and the presence of directly contradictory evidence offered by Defendants, the Court is persuaded that there is no possibility that Plaintiffs could succeed on their claim against Whitesides. Accordingly, the Court finds that Whitesides was fraudulently joined and his presence in this suit does not defeat diversity. The Court will therefore retain jurisdiction.

Plaintiffs have also argued that jurisdiction is improper because less than all of the Defendants joined in the removal. When this case was refiled in Utah, Plaintiffs initially served only Ford and Whitesides. As such, when the removal notice was filed, Rockaway had not been served. The removal notice was filed within the allotted thirty days after notice was received. However, though Rockaway consented in writing two days before the removal notice was filed, Plaintiffs now argue that Rockaway could not have consented before being served and thus there is no unanimity among the defendants. It is well established that the rule requiring defendants to agree to removal "does not apply to any defendant which has not been served or is not otherwise in receipt of the complaint by the time of removal."[16] Accordingly, Rockaway did not need to "take any affirmative step in order for the federal court to retain jurisdiction" and Plaintiffs may "challenge removal based on lack of unanimous consent only with respect to non-fraudulently joined defendants served or otherwise in receipt of the complaint by the time of removal."[17]

Finally, Defendants have spent several pages of their opposition arguing that if Whitesides was an agent of Rockaway, he could not be personally liable for defects in the

---

[16]*Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 631 (E.D. Pa. 2003).

[17]*Id.*

product under settled principal/agent law.  The only matter before the Court on this Motion is the existence of diversity jurisdiction.  Upon review, it does not appear to the Court that Plaintiffs have argued, based on Whitesides's status as agent, diversity is defeated even if the negligence claim against Whitesides is not colorable.  Accordingly, the Court will not analyze that issue here.

### III.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Remand (Docket No. 7) is DENIED.  The hearing in this matter set for May 11, 2012, is STRICKEN.

DATED   April 27, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge